# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|   |   |   |
|---|---|---|
| THERESA PURVIS, | : | |
| | : | Civil Action No. 09-5318 (SDW)(MCA) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | February  23, 2011 |
| | : | |
| Defendant. | : | |
| | : | |

**WIGENTON**, District Judge.

Before the Court is Plaintiff Theresa Purvis's ("Plaintiff" or "Purvis") appeal of the Commissioner of Social Security's (the "Commissioner" or "Defendant") final decision that she is not disabled under Title II, 42 U.S.C. § 1614(a)(3)(A), of the Social Security Act (the "Act"). The appeal is decided without oral argument pursuant to Local Civil Rule 9.1(b).  The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g).  Venue is proper under 28 U.S.C. § 1391(b).  For the reasons set forth below, the Court remands the Commissioner's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

### i.    *Procedural History*

On July 22, 2005, Plaintiff applied for Supplemental Social Security Income ("SSI") claiming disability due to bronchial asthma.  (ALJ's Decision at 1.)  The Commissioner denied Purvis's claim at the initial and reconsideration stages.  (*Id*.)  Subsequently, Purvis requested a hearing with an Administrative Law Judge ("ALJ").  (*Id.*)  Pursuant to her request, a hearing was scheduled before ALJ Michal L. Lissek on June 11, 2008.  (ALJ's Decision at 1.)

Thereafter, on January 21, 2009, the ALJ denied Plaintiff's claim because "[c]onsidering [her] . . . age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [] [she] can perform." (*Id.* at 12.)  The ALJ also found that Purvis's symptoms were not credible "to the extent that they are inconsistent with the [] residual functional capacity assessment," which concluded she was capable of performing sedentary work pursuant to 20 C.F.R. § 416.967(a). (*Id.* at 9.)  Furthermore, the ALJ found that although Plaintiff's bronchial asthma, which was exacerbated by her obesity and angio-edema, was a severe impairment, it did "not meet or equal any of the listed impairments . . . ." (*Id.* at 8.)  Purvis appealed the ALJ's decision, and her request for review was denied. (AC Denial at 1.)  Subsequently, Purvis filed this appeal.  Purvis alleges that the ALJ's credibility findings are not supported by substantial evidence because the ALJ failed to: (1) consider her subjective complaints, and (2) properly evaluate her obesity as a listed impairment. (Pl.'s Br. 4.)[1]

### ii.        *Personal and Employment History*

Plaintiff is forty years old with four children. (Tr. 3-4; Pl.'s Br. 5.)  Her highest level of education is the 11th grade. (Tr. 4.)  However, she acquired some vocational training at the Newark Business School, where she became certified in food handling and preparation. (*Id.*)

From 2001 to 2003, Purvis was a housekeeper at Gerri's House Cleaning Company ("Gerri's"). (Tr. 5-6.)  Plaintiff's duties there included dusting, vacuuming, taking out the garbage, and washing dishes. (Tr. 6; Pl.'s Br. 18.)  Plaintiff alleges she left her job at Gerri's because it aggravated her asthma. (Tr. 6.)  Next, from 2003 to 2004, Purvis was employed in the food service department at Woods Service Company. (Pl.'s Ex. 6E at 2.)  Purvis's last place of

---

[1] Because the Court is remanding this case based on Plaintiff's first claim, it will not address her second claim that the ALJ erroneously concluded that her obesity was not a listed impairment. (Pl.'s Br. 30.)

employment was at East Orange Hospital (the "hospital"). (Tr. 5.) Purvis worked at the hospital from 2004 to 2005. (Pl.'s Ex. 6E at 2.) Her responsibilities there included cleaning and managing the hospital's dietary menu. (*Id*.; Pl.'s Br. 18.)

### iii.    *Medical History*

Plaintiff, who is allergic to animals, was diagnosed with asthma at the age of twenty-seven.[2] (Tr. 7, 14; Pl.'s Ex. 8F at 1.) In November 2005, during a consultation with Dr. Henry Rubenstein, Purvis asserted that she had about three asthma attacks a week. (Pl.'s Ex. 8F at 1.) One year later, Dr. Zaza Cohen ("Dr. Cohen"), a specialist, diagnosed Purvis with possible "deconditioning, or another pulmonary parenchymal disease," but her symptoms were "suspicious of [a] diagnosis of asthma." (Pl.'s Ex. 11F at 5; Pl.'s Br. 11.) At the ALJ hearing, Plaintiff testified that "she receives at least six attacks per year." (Tr. 3.) She also maintains that she has gone to the emergency room about eight times within the past year due to her asthma, and she was hospitalized for ten days due to a severe asthma attack. (Pl.'s Ex. 8F at 1.) During an asthma attack, Purvis claims she cannot breathe, she begins to shake, and she eventually blacks out. (Tr. 14.) Moreover, Purvis alleges her asthma attacks last "for a month or so," and that she uses her nebulizer daily. (*Id.* at 14-15.) Other medications Plaintiff uses to control her asthma include Advair, Albuterol, Singulair, and Combivent. (Pl.'s Ex. 9E at 4.) However, Dr. Cohen noted that Plaintiff had difficulty controlling her asthma despite the use of inhalers and other medications. (Pl.'s Ex. 11F at 5.)

On July 3, 2008, Dr. Cynthia Paige ("Dr. Paige"), Purvis's treating physician, diagnosed Plaintiff with "recurrent anaphylaxis [] mucosal edema and airway compromise at least [five] times per year [] requiring intubation on one occasion in 2007 [] the inciting allergen is

---

[2] Although Plaintiff claims that she suffers from severe asthma and is allergic to animals, on July 5, 2005, she admitted to owning a cat and a dog. (Pl.'s Ex. 5F at 7.)

unknown." (Pl.'s Ex. 15F at 1.) According to Dr. Paige, Purvis suffers from vocal cord dysfunction, recurrent hoarseness, severe obesity, severe persistent asthma, thyroid nodules, and nodular densities of the nasopharynx. (*Id.*) Additionally, Dr. Paige opined that Purvis has "physical impairments that severely restrict her function," (*id.*), and that overall her condition could be fatal. (*Id.* at 2.)

Furthermore, Purvis suffers from a thyroid condition. (*Id.* at 8.) She testified that her neck swells up as a result of the thyroid, and that she has to stick herself in the neck with a pin to alleviate the swelling. (*Id.*) Purvis further alleges that she has difficulty speaking when her neck swells. (Pl.'s Ex. 15F at 1.) According to Plaintiff, the limitation on her ability to speak can last up to three or four weeks. (*Id.*) However, a December 6, 2005 ultrasound revealed that Purvis's "thyroid gland was within normal limits in size." (ALJ's Decision at 5.)

Due to the above ailments, Purvis contends that she has been advised not to travel by herself and that she is unable to do any past relevant work or other work in the national economy. (Tr. 3, 11, 15.) Essentially, Plaintiff contends that her asthma is so severe that she is unable to communicate effectively. (*Id.* at 12.) She also claims that due to her physical condition, she is unable to sit for long periods of time without experiencing pain from her left thigh to her knees. (*Id.*) Plaintiff further alleges that she has a torn tendon in her left foot which makes sitting more painful. (*Id.* at 13.) Additionally, she alleges her asthma prevents her from taking medication for her arthritis because of the adverse drug interaction. (*Id.*)

Despite her alleged ailments, Purvis is able to perform daily activities such as preparing her children for school, doing laundry, cooking, dressing, bathing, shopping for groceries and clothes, and cleaning the house. (Pl.'s Ex. 1E at 1-4.) Except for doing the laundry, Plaintiff is able to complete these tasks without assistance. (*Id.* at 1.) She is also able to go to the movies

and attend family functions.  (*Id.* at 5.)  She claims that she mostly experiences shortness of breath while carrying out these activities.  (Pl.'s Ex. 1E at 2.)

On February 8, 2006, a non-examining disability consultant conducted a Physical Residual Functional Capacity ("RFC") assessment. (Pl.'s Ex. 13F at 8.) The consultant confirmed Purvis's diagnosis of asthma.  However, he concluded that Purvis could occasionally and frequently lift and/or carry ten pounds, walk and/or stand for at least three hours during an eight-hour workday, and sit for about six hours during an eight-hour workday with normal breaks.  (*Id.* at 2.)  He also found Plaintiff has unlimited ability to push and/or pull.  (*Id.*) Furthermore, the RFC noted that she "does personal care with minimum difficulty," she is able to do her own laundry, and she has "shortness of breath after walking a short distance."  (*Id.*) Moreover, the RFC did not find any communicative limitations.  (*Id.* at 5.)  However, although the RFC concluded that Purvis could occasionally climb (steps and ramps), stoop, kneel, crouch and crawl, it found that she could never balance herself.  (*Id.* at 3.)

On the other hand, Dr. Paige opined on July 3, 2008, that Plaintiff was "totally disabled." (Pl.'s Ex. 15F at 1.)  According to Dr. Paige, while Purvis had normal mental functions, she could sit for only twenty to thirty minutes due to dypsnea and lower back pain.  (*Id.*)  Moreover, she found that Purvis could not lift more than twenty pounds, carry any weight or bend her knees beyond an eighty degree angle.  (*Id.*)  Additionally, Dr. Paige asserted that while Purvis could use public transportation, she could not walk more than one or two blocks without needing to rest.  (*Id.*)

On August 20, 2008, Dr. Martin Fechner ("Dr. Fechner"), a non-examining physician, concluded that Purvis suffers from bronchial asthma.  (Pl.'s Ex. 17F at 1.)  Dr. Fechner noted that Plaintiff made occasional visits to the emergency room and had been hospitalized.  (*Id.*)  Dr.

Fechner determined that Purvis was "exogenously obese," and suffered from "possible hereditary angio-edema." (*Id.*)  Although he identified respiratory disease and obesity as the underlying medical impairments limiting Plaintiff's activities, he concluded that Purvis could shop, travel alone, walk, use public transportation, climb a few steps, prepare a simple meal, care for her personal hygiene, and manage paperwork and files.  (*Id.* at 4-5, 10.)  Also, Dr. Fechner reported that Plaintiff could stand and walk for thirty minutes without interruption.  (*Id.* at 4, 5.)  He opined that Plaintiff could frequently stoop, and she could reach with both hands; continuously operate foot controls; occasionally balance, kneel, and crouch.  (*Id.* at 8.)  However, she could never crawl, or climb ladders or scaffolds.  (*Id.*)  Dr. Fechner also noted that Purvis has certain environmental limitations, including excessive dust, known pulmonary irritants, wetness, humidity, extreme heat, and extreme cold.  (*Id.* at 8.)  Based on these findings, Dr. Fechner determined Plaintiff's symptoms, whether reviewed separately or combined, did not qualify as a listed impairment.  (*Id.* at 2.)

Furthermore, on November 24, 2008, the vocational rehabilitative counselor, Mr. Rocco J. Meola ("Meola"), found that although Plaintiff would be unable to perform her past relevant work, she could perform sedentary work "where speaking is not required more than 1/3 of an 8-hour day, she can do reaching overhead frequently but all other use of hands and feet continuously, can never climb ladders or scaffolds or crawl but can occasionally climb stairs and ramps, balance, kneel and crouch and can frequently stoop."  (Pl.'s Ex. 10E at 1, 4.)  Meola also found that Plaintiff could perform other jobs in the national economy such as "assembler," "compact assembler," "polisher," and "scaler."  (*Id.* at 4.)

**STANDARD OF REVIEW**

In social security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla;' it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bailey v. Comm'r of Soc. Sec.*, 354 Fed. Appx. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 Fed. Appx. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, 2009 U.S. Dist. LEXIS 32110, at *7 (M.D.Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because we would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 Fed. Appx. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). The court is required to give substantial weight and deference to the ALJ's findings. *Scott v. Astrue*, 297 Fed. Appx. 126, 128 (3d Cir. 2008). However, "where there is conflicting evidence, the ALJ must explain which

7

evidence he[/she] accepts and which he[/she] rejects, and the reasons for that determination." *Cruz*, 244 Fed. Appx. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D.Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

## DISCUSSION

An individual will be considered disabled under the Act if he/she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be severe enough to render the individual "not only unable to do his[/her] previous work but [unable] considering his[/her] age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy. . . ." § 423(d)(2)(A). Subjective complaints of pain, alone, cannot establish disability. § 423(d)(5)(A). Instead, a claimant must show that the "medical signs and findings" related to her ailment have been "established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." *Id.* The Social Security Administration (the "SSA")

utilizes a five-step sequential analysis to determine disability.  *Cruz*, 244 Fed. Appx. at 480

(citing 20 C.F.R. § 404.1520 (a)(4)(i)-(v)).  "A negative conclusion at steps one, two, four or five

precludes a finding of disability."  *Cruz*, 244 Fed. Appx. at 480.  However, "[a]n affirmative

answer at steps one, two or four leads to the next step.  An affirmative answer at steps three or

five results in a finding of disability."  *Id.* (quoting § 404.1520 (a)(4)(i)- (v)) (internal quotations

omitted).

> The United States Supreme Court describes the evaluation process as follows:

> > The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his[/her] ability to work.  In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work.  If the claimant's impairment matches or is "equal" to one of the listed impairments, he[/she] qualifies for benefits without further inquiry.  If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps.  At these steps, the inquiry is whether the claimant can do his[/her] own past work or any other work that exists in the national economy, in view of his[/her] age, education, and work experience.   If the claimant cannot do his[/her] past work or other work, he[/she] qualifies for benefits.

*Sullivan v. Zebley*, 493 U.S. 521, 525-26 (1990); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  The

burden of persuasion lies with the claimant in the first four steps.  *Malloy v. Comm'r of Soc. Sec.*,

306 Fed. Appx. 761, 763 (3d Cir. 2009).  Once the claimant is able to show that the impairment

prevents him/her from performing his/her past work the burden shifts to the Commissioner to

demonstrate "that the claimant still retains a residual functional capacity to perform some

alternative, substantial, gainful activity present in the national economy."  *Id.* (citing *Kangas v.*

*Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)).

In the instant case, Purvis argues that the ALJ erred because: (1) his credibility finding is unfounded, (2) he unjustifiably rejected her subjective complaints,[3] and (3) he did not give the proper weight to her treating physician's opinion.  (Pl.'s Br. 25-26.)  Upon consideration, this Court remands the ALJ's decision.  The ALJ needs to address Plaintiff's subjective complaints and state why they are not credible.

**Credibility Finding on Subjective Complaints**

Plaintiff argues that the ALJ erred in concluding that her subjective complaints were not credible.  Although "a claimant's subjective complaints must be given serious consideration, they must also be supported by medical evidence."  *Johnson v. Comm'r of Soc. Sec.*, 2010 U.S. App. LEXIS 22435, at *19 (3d Cir. Oct. 27, 2010) (citing *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992)).  The ALJ may not discredit a claimant's subjective complaints based on his/her "own medical judgment; it must be discredited by contradictory medical evidence."  *Cruz,* 244 Fed. Appx. at 481 (quoting *Kent*, 710 F.2d at 115).  "[T]he ALJ must also consider and weigh all of the [medical and] non-medical evidence before him."  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). If there are inconsistencies in the evidence, the ALJ must mention and analyze the contradictory evidence that tends to discredit the claimant.  *Id.*; *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).  The ALJ must not only express which evidence he relies on to support his decision, he "must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence."  *Burnett*, 220 F.3d at 121 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)); *see also Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990) (the ALJ may reject a claimant's subjective complaints but he must "specify his reasons for rejecting [] [the] claims and support his conclusion with medical evidence in the record.")  "In the absence of such an

---

[3] Plaintiff's first and second arguments are analyzed together because they are interrelated.

indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Furthermore, Social Security Ruling ("SSR") 96-7p provides:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. *It is not sufficient to make a conclusory statement that "the individual's allegations have been considered," or that "the allegations are not credible."* It is also not enough for the adjudicator to simply recite the factors that are described in the regulations for the evaluation of symptoms.

(emphasis added).

Here, although the ALJ properly articulated the relevant regulation criteria, his findings are conclusory. Rather than explain his basis for finding that Plaintiff's subjective complaints were not credible, the ALJ simply stated that Plaintiff's subjective testimony is "not supported by the objective evidence in the record." (ALJ's Decision at 9.) For instance, the ALJ states, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [] residual functional capacity assessment." *Id.* It is unclear from the ALJ's decision whether the ALJ considered all the medical reports, as well as Plaintiff's subjective testimony. *See Van Horn v. Schweiker*, 717 F.2d 871, 873-74 (3d Cir. 1983) (concluding ALJ's decision is not supported by substantial evidence because he failed to provide reasons for his conclusion that the claimant and his witnesses were not credible). Without a thorough analysis of all the relevant evidence, this Court cannot determine if the ALJ's decision is supported by substantial evidence.

Furthermore, it is difficult to ascertain what evidence the ALJ rejected and what evidence he relied on in making his decision. For example, Defendant cites Plaintiff's

ownership of a cat and a dog as a basis for affirming the ALJ's determination that Plaintiff is not credible. (Def.'s Br. 9.) However, the ALJ's decision makes no mention of Purvis's ownership of pets. It is not this Court's task to sift through the record to determine what evidence the ALJ *might* have relied on to support his decision. Indeed, the ALJ's failure to indicate his basis for rejecting Plaintiff's subjective complaints creates the impression that "probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d at 705. Consequently, the ALJ must provide a more developed finding, clearly stating his reasons for concluding that Purvis is not credible.[4]

**Treating Physician's Opinion**

Plaintiff also contends that the ALJ erred by giving lesser weight to her treating physician's testimony. The ALJ must "always consider the medical opinions . . . together with the rest of the relevant evidence [] [he/she] receive[s]." 20 C.F.R. § 416.927(b). In fact, the ALJ must "give more weight to opinions from [] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] [] medical impairment(s)." 20 C.F.R. § 416.927(d)(2). The ALJ cannot reject medical opinions by a physician, particularly concerning "the frequency and severity" of a claimant's condition "without sufficient justification." *Roberts v. Comm'r of Soc. Sec.*, 2010 WL 1931136, at *13 n.8 (D.N.J. May 12, 2010). Also, if there is a conflict in the medical reports, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider all the evidence and give some reason for discounting the evidence

---

[4] Although the Court remands the ALJ's decision for a more detailed finding, it notes that in the course of its own research, it discovered one profile picture on what is believed to be Plaintiff's Facebook page where she appears to be smoking. Profile Pictures by Theresa Purvis, Facebook, http://www.facebook.com/home.php#!/photo.php?fbid=118639304869945&set=a.104431666290709.8034.1000017 16287336&theater (last visited Feb. 16, 2011). If accurately depicted, Plaintiff's credibility is justifiably suspect.

[he/]she rejects." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505-506 (3d Cir. 2009) (quoting *Plummer*, 186 F.3d at 429) (internal quotations omitted).

In this case, the ALJ accorded lesser weight to Dr. Paige's opinion because he found it inconsistent with the evidence in the record. The ALJ stated that "[i]n light of the claimant's ability to perform the activities of daily living despite her impairments, I find that Dr. Paige's opinion that the claimant is totally disabled deserves lesser weight under 20 CFR [§] 416.927, even though she is a treating source." (ALJ's Decision at 10.) In making that determination, the ALJ also pointed to Dr. Fechner's assessment which concluded that Purvis "has the residual functional capacity to perform sedentary work as defined in 20 CFR [§] 416.967(a) . . . that does not require speaking more than 1/3 of an 8-hour day." (*Id.*) The ALJ also relied on Meola's report which found that Plaintiff could perform other "jobs in the national and local economies." (*Id.* at 10-11.) Here, contrary to Plaintiff's position, the ALJ sufficiently explained why he rejected the treating physician's opinion and his conclusion was based on the medical evidence, as well as other evidence in the record. *See Johnson*, 2010 U.S. App. LEXIS 22435, at \*19 (the ALJ is required to give controlling weight to the treating physician's opinion only "when it is well-supported by medical evidence and is consistent with other evidence in the record."); *Plummer*, 186 F.3d at 429 ("[a]n ALJ may reject a treating physician's opinion . . . [or] may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.") Consequently, the ALJ did not err in his analysis of the treating physician's opinion.

## <u>CONCLUSION</u>

For the foregoing reasons, the ALJ's decision is REMANDED for a more developed finding.  The ALJ is directed to address Plaintiff's subjective complaints and explain why he does not find them credible.


**SO ORDERED.**

s/ Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**

cc:  Madeline Cox Arleo, U.S.M.J.